IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Plaintiff-Respondent, | ) | Case No. | CV-09-200-E-BLW |
| | ) | | CR-02-27-E-BLW |
| v. | ) | | |
| | ) | **MEMORANDUM DECISION** | |
| BENJAMIN QUINONEZ, | ) | **AND ORDER** | |
| | ) | | |
| Defendant-Movant. | ) | | |
| | ) | | |

Pending before the Court is Benjamin Quinonez' ("Quinonez") Motion to

Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Docket No.

1). Having reviewed the Motion, the Government's Response (Docket No. 11),

Quinonez' Reply (Docket No. 15),[1] and the underlying criminal record, the Court

enters the following Order dismissing the Motion for the reasons set forth below.

---

[1] All further docket numbers shall refer to the underlying criminal case, CR-02-27-E-BLW, unless otherwise noted.

**Memorandum Decision and Order - 1**

**A.     Background and Summary of Issues**

On January 23, 2002, Quinonez was named as the sole defendant in a one-count indictment charging possession with intent to distribute 500 grams or more of methamphetamine, cocaine, and 50 kilograms or more of marijuana. *Indictment* (Docket No. 1).  On March 26, 2002, the Government filed a superseding indictment charging Quinonez and two other individuals with conspiracy to possess with intent to deliver 500 grams or more of methamphetamine between January 1997 and January 9, 2002, and charging Quinonez alone with possession with intent to distribute 500 grams or more of methamphetamine, cocaine, and marijuana. *Superseding Indictment* (Docket No. 11).  Quinonez' two co-Defendants pled guilty on June 3, 2002. *Minutes* (Docket Nos. 30 and 32).

CJA appointed counsel Steven Richert represented Quinonez until co-Defendants entered their pleas. *Motion to Withdraw* (Docket No. 40).  He withdrew after Quinonez engaged the services of Robert L. Booker, a Salt Lake City, Utah attorney. *Motion to Appear Pro Hac Vice* (Docket No. 34).

On July 26, 2002, the Government filed a second superseding indictment adding two additional individuals, extending the period of the conspiracy to February 24, 2002, adding a money laundering count against Quinonez, and adding

a money laundering count against the two newly added co-Defendants.  *Second Superseding Indictment* (Docket No. 57).   On February 18, 2003, pursuant to a Plea Agreement, Quinonez pled guilty to the possession and the money laundering counts.[2]  *Plea Agreement*  (Docket No. 74); *Minutes* (Docket No. 79).

The Probation Officer thereafter prepared a draft Presentence Report ("PSR") and submitted it to counsel.  Following the directives of USSG §§  3D1.1 and 3D1.2 for grouping multiple offenses, the Probation Officer determined that the money laundering guideline, § 2S1.1, was the appropriate guideline.  As required by § 2S1.1(a)(1), he then determined that the base offense level was 38 based on the drug quantity, that the conviction under 18 U.S.C. § 1956 for money

---

[2]  A portion of the Factual Basis of the Plea Agreement stated as follows:  "Between the dates of January, 1997, and February 24, 2002, in the district of Idaho and elsewhere the defendant knowingly joined and agreed with others, including co-defendant Felipe Chavez, to transport and deliver controlled substances including cocaine, marijuana, and in excess of 500 grams of methamphetamine in Idaho.  The conspirators, including the defendant, would transport the controlled substances in hidden compartments of vehicles, and when the vehicles arrived in Idaho, would dismantle the portions of the vehicles containing the controlled substances.  The conspirators would then store the controlled substances in storage units in and around the Pocatello, Idaho area where the controlled substances would be broken down and distributed. On January 9, 2001, authorities found in excess of 500 grams of methamphetamine in such a storage unit to which the defendant had access and control.  The defendant would distribute the controlled substances both directly, and by utilizing individuals located in the Pocatello area, who would distribute drugs provided by the defendant and coconspirators.  A portion of the proceeds from the distribution of these controlled substances were (sic) then transferred via money wire out of the State of Idaho, to locations in the United States and Mexico.  These transactions often utilized fictitious names in order to conceal the origin of the funds."  *Plea Agreement*, ¶ I.C. (Docket No. 74).

laundering required a 2-level enhancement pursuant to § 2S1.1 (b)(2)(B),[3] that a 2-level upward adjustment for role in the offense was warranted pursuant to § 3B1.1(b), that Quinonez was entitled to a 3-level adjustment for acceptance of responsibility pursuant to § 3E1.1, and that his criminal history category was III.

The Government objected to the draft PSR contending that a 4-level role enhancement for being an organizer or leader of five or more participants was more appropriate. *Objections to Presentence Report* (Docket No. 90). Quinonez objected to the drug quantity (contending that the appropriate base offense level was 34), much of the relevant conduct, the role enhancement, the money laundering enhancement (stating that the money was for child support and not to promote drug trafficking), and the criminal history category.[4] *Defendant's Objections to Presentence Report* (Docket No. 91). He also requested an

---

[3] Section 2S1.1 covers laundering of monetary instruments and engaging in monetary transactions in property derived from unlawful activity and applies to offenses under 18 U.S.C. §§ 1956, 1957, and 1960. It calls for a 2-level enhancement if the defendant is convicted of laundering of monetary transactions under 18 U.S.C. § 1956, as Quinonez is here, as opposed to 18 U.S.C. § 1957 or § 1960.

[4] Counsel argued that Quinonez had not served 256 days on the driving under the influence conviction noted in PSR ¶ 108 and that the conviction should only have been assessed one rather than two points. He believed that Quinonez would then be entitled to the § 5C1.2 safety valve. However, he later conceded that two points were appropriate. Either way, however, Quinonez would not have qualified for the safety valve because he received two additional points for having committed the instant offense while on probation or parole. The safety valve is not available to defendants with more than one criminal history point. *See* § 5C1.2(a)(1).

**Memorandum Decision and Order - 4**

evidentiary hearing.

The Probation Officer addressed the objections in the Addendum and submitted the final PSR with the base offense level of 38 and the 2-level enhancement for money laundering from the draft PSR, and a 3-level enhancement for being a manager or supervisor of the money laundering activities of five or more participants. The Probation Officer recommended against an adjustment for acceptance of responsibility given the extensive objections to relevant conduct both in the presentence interview and in the formal objections. The Probation Officer also recommended against the safety valve adjustment under § 5C1.2 because of Quinonez' role in the offense, the number of criminal history points, and failure to provide truthful information to the Government. Therefore, the resulting total offense level was 43. With a criminal history category of III, the guideline range became life imprisonment, the statutory maximum.

The Court conducted a three-day evidentiary sentencing hearing, at which Quinonez testified, to resolve the disputed issues. The Government presented the testimony of Quinonez' three co-Defendants (including the mother of his five children), seven law enforcement officials or investigative agents, and one other individual who had engaged in drug trafficking activities with Quinonez. The Court ultimately fixed the base offense level at 36, applied a 4-level enhancement

for role in the offense, a 2-level enhancement for the money laundering offense, and a 2-level enhancement for obstruction of justice based on perjury at the sentencing hearing. *Sent. Tr.* 326-27. The Court also determined that Defendant was not entitled to an adjustment for acceptance of responsibility. However, it did grant a 2-level reduction for Quinonez' stipulation to deportation pursuant to the Plea Agreement. *Sent. Tr.* 328. The resulting guideline range based on an offense level of 42 with a criminal history category of III was 360 months to life. *Sent. Tr.* at 328. On May 16, 2003, after giving serious consideration to a life sentence, the Court sentenced Defendant to concurrent terms of 480 months on the drug count and 240 months on the money laundering count. *Sent. Tr.* 338; 340. *Judgment* (Docket No. 101).

Quinonez appealed. *Notice of Appeal* (Docket No. 102). He ultimately retained David Balakian of Fresno, California to represent him on appeal. *Notice of Appearance* (Docket No. 111). On appeal, Quinonez alleged ineffective assistance of counsel for failure to object to the Court's findings on the enhancement for obstruction of justice, the failure to grant an adjustment for acceptance of responsibility, the failure to group the offenses as required by the sentencing guidelines, and the drug quantity calculation.

On May 24, 2004, Mr. Balakian filed a [§ 2255](#) Motion on Quinonez' behalf

alleging the same grounds of ineffective assistance of counsel. *§ 2255 Motion* (Docket No. 117). On June 30, 2004, the Court entered an order dismissing the § 2255 Motion without prejudice due to the pending appeal. *Order* (Docket No. 119).

The Ninth Circuit affirmed the Court's sentencing determinations but remanded for resentencing consistent with *United States v. Ameline*, 409 F.3d 1073, 1084-85 (9th Cir. 2005) (en banc). *United States v. Quinonez*, 166 Fed. Appx. 284 (9th Cir. 2006) (Docket No. 125). On November 13, 2006, having reviewed the record and the briefs of the parties, the Court determined that the sentence imposed would not have been materially different under advisory guidelines. *Memorandum Decision and Order* (Docket No. 136). Quinonez again appealed. *Notice of Appeal* (Docket No. 137). He was represented on this second appeal by appointed counsel Dennis Benjamin. *Order* (Docket No. 151). On January 18, 2008, the Ninth Circuit affirmed the Court's decision not to resentence Quinonez. *United States v. Quinonez*, 264 Fed. Appx. 618 (9th Cir. 2008) (Docket No. 155). Quinonez thereafter timely filed the pending § 2255 Motion.

In his current *pro se* § 2255 Motion, Quinonez raises nine grounds of ineffective assistance of counsel pertaining primarily to the sentencing phase of the proceeding. However, in his Reply, he appears to be raising issues regarding his

plea as well. Mr. Booker represented him at both the plea and the sentencing.

**B.    Standard of Law**

**1.    28 U.S.C. § 2255**

Title 28 U.S.C. § 2255 provides four grounds under which a federal court may grant relief to a federal prisoner who challenges the imposition or length of his or her incarceration: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence is otherwise "subject to collateral attack." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that a federal district court judge must dismiss a § 2255 motion "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief."

If the Court does not dismiss pursuant to Rule 4(b), the Court shall order the Government "to file an answer, motion, or other response within a fixed time, or to take other action the judge may order."

The Court may dismiss a § 2255 motion at other stages of the proceeding such as pursuant to a motion by respondent, after consideration of the answer and

motion, or after consideration of the pleadings and an expanded record. *See* Advisory Committee Notes following Rule 8 of the Rules Governing Section 2254 Proceedings incorporated by reference into the Advisory Committee Notes following Rule 8 of the Rules Governing Section 2255 Proceedings.

If the Court does not dismiss the proceeding, the Court then proceeds to a determination under Rule 8 of whether an evidentiary hearing is required. The Court need not hold an evidentiary hearing if the issues can be conclusively decided on the basis of the evidence in the record. *See Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994).

### 2. Ineffective Assistance of Counsel

The well-established two-prong test for evaluating ineffective assistance of counsel claims is deficient performance and resulting prejudice. *See Strickland v. Washington*, 466 U. S. 668 (1984). Mere conclusory allegations are insufficient to state a claim of ineffective assistance of counsel. *See Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989).

In order to establish deficient performance, a defendant must show that counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Under the performance prong, there is a strong presumption that counsel's performance falls "within the wide range of reasonable

professional assistance." *Id*. at 689.  This is so because for the defendant, "[i]t is all too tempting . . . to second-guess counsel's assistance after conviction or adverse sentence. . . ." *Id.*  For the court, "it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (discussing *Strickland*).  In evaluating the performance prong, the court should "assess counsel's overall performance throughout the case in order to determine whether the 'identified acts or omissions' overcome the presumption that a counsel rendered reasonable professional assistance." *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986).

In order to establish prejudice, a defendant must affirmatively prove by a reasonable degree of probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 694. The *Strickland* standard is "highly demanding." *Kimmelman*, 477 U.S. at 381-82.

Both prongs of the *Strickland* test must be met "before it can be said that a conviction (or sentence) 'resulted from a breakdown in the adversary process that render[ed] the result [of the proceeding] unreliable' and thus in violation of the Sixth Amendment." *United States v. Thomas*, 417 F.3d 1053, 1056 (9th Cir. 2005) (quoting *Strickland*, 466 U.S. at 687).

**Memorandum Decision and Order - 10**

In evaluating an ineffective assistance of counsel claim, the Court may consider the performance and prejudice components of the *Strickland* test in either order. *Strickland*, 466 U.S. at 697. Furthermore, the Court need not consider one component if there is an insufficient showing of the other. *Id.*

**C.      Discussion**

The Court will address each of Quinonez' claims in turn. The first four claims are seemingly taken directly from Mr. Balakian's brief on the first appeal. As the Government contends in its Response, however, an issue adversely decided on appeal cannot be raised in a § 2255 proceeding absent "countervailing equitable considerations." *See* *Winthrow v. Williams*, 507 U.S. 680, 720-21 (1993). *See also* *Odom v. United States*, 455 F.2d 159, 160 (9th Cir. 1972) ("The law in this circuit is clear that when a matter has been decided adversely on appeal from a conviction, it cannot be litigated again on a § 2255 motion."). Quinonez has not alleged any such countervailing equitable considerations. Nevertheless, the Court will briefly address Quinonez' Reply as to these four claims keeping in mind the Ninth Circuit's decision that:

> What Quinonez claims as ineffective assistance of counsel has not resulted in the waiver of any right on appeal. We have reached the merits of Quinonez' arguments on appeal. Quinonez fails to provide authority, and we find none, holding that counsel's failure to object to the court's final determinations constitutes ineffective assistance of

counsel.

*Quinonez*, 166 Fed. Appx. at 286.

**1.     Failure to Object to Obstruction of Justice Finding.**

Despite the Ninth Circuit's ruling, in his Reply, Quinonez alleges that counsel's failure to "preserve and object to" the obstruction of justice enhancement prejudiced him by waiving his right to appeal a valid appealable issue.  *Reply* at 2 (citing *Neary v. United States*, 998 F.2d 563 (8th Cir. 1993)).  In *Neary*, however, counsel had raised a potentially valid objection to an enhancement for obstruction of justice at sentencing but had failed to raise it on appeal.  The court found the failure to appeal the issue constituted ineffective assistance of counsel and remanded for an evidentiary hearing to determine whether the falsehoods were material.

Here, counsel *did* raise the obstruction of justice issue on appeal and specifically argued lack of materiality.  The Ninth Circuit found that the Court "made appropriate and specific findings in support of this sentencing enhancement. The findings are supported by evidence in the record and are not clearly erroneous." *Quinonez*, 166 Fed. Appx. at 285.

**2.     Failure to Object to the Finding that the Obstruction of Justice Enhancement Precluded an Adjustment for Acceptance of Responsibility.**

Similarly, in his Reply, Quinonez argues that failure of counsel to object to the finding that he was not entitled to an adjustment for acceptance of responsibility resulted in a waiver of his right to seek review of the issue. *Reply* at 2. However, appellate counsel *did* raise this issue on appeal. The Ninth Circuit found that the Court did not clearly err in denying the adjustment for acceptance of responsibility because "Quinonez attempted to minimize or deny his involvement and did not accept responsibility for the conduct underlying all charges." *Quinonez*, 166 Fed. Appx. at 286.

Quinonez also argues in his Reply that his educational and language deficiencies and the interpreter's translation contributed to the confusion that resulted in the obstruction of justice enhancement which triggered the denial of the acceptance of responsibility adjustment. *Reply* at 2-4. These allegations are totally lacking in specificity and do not state a claim for relief. *See Shah*, 878 F.2d at 1161. Furthermore, the Court's review of the transcript of the sentencing hearing fails to reveal any evidence of confusion on the part of Quinonez.

### 3. Failure to Object to the Court's Determination that the Sentence for the Money Laundering Count Should be Added to the Base Level as Opposed to Being "Grouped" with the Primary Offense.

The Ninth Circuit concluded that Quinonez was not sentenced to a higher offense level than the level provided for in the guidelines. In so concluding, the

court observed, "Although it is arguable that the district court did not articulate the grouping of the drug trafficking and money laundering offenses, the end result of the district court's calculation of an offense level of 42 is the same." *Quinonez*, 166 Fed. Appx. at 286.

Although it may not have been clear, the Court followed the lead of the Presentence Report which grouped the offenses pursuant to §§ 3D1.1 and 3D1.2 and determined that the applicable guideline was the money laundering guideline, § 2S1.1, as urged by Quinonez in his § 2255 Motion. *See PSR* at ¶ 95. Nevertheless, under § 2S1.1, the Court was still required to determine the drug quantity and add two levels for Quinonez' conviction under 18 U.S.C. § 1956. *See* USSG § 2S1.1(a)(1) and (b)(2)(B).

### 4. Failure to Object to Alleged Relevant Conduct Occurring in 1994 or 1995 Before the Period of the Alleged Conspiracy.

The Ninth Circuit found that the Court did not include the 1994 and 1995 transactions when calculating the drug quantity. *Quinonez*, 166 Fed. Appx. at 286. *See also PSR* ¶ 67 ("behavior prior to 1997 is not considered relevant conduct"); *Sent. Tr.* 320-322 (drug quantity calculation).

In his Reply, Quinonez relies on *United States v. Mannino*, 212 F.3d 835, 843 (3d Cir. 2000), in support of this claim. However, *Mannino* is distinguishable given that counsel there failed to raise a viable drug quantity argument on appeal that he

had raised at sentencing.  Here, Quinonez' counsel *did* raise the issue on appeal that Quinonez again advances.

### 5.    Failure to Confirm the Court's Position on the Application of the Sentencing Guidelines to His Case.

Quinonez alleges that his attorney should not have consented to an evidentiary hearing at sentencing without confirming the Court's position on the application of the sentencing guidelines and that his failure to do so prejudiced him. The Government responds that his summary allegations do not identify how he was deprived of a fair proceeding.

In his Reply, Quinonez asserts that counsel did not advise him before his plea that he might be sentenced under the sentencing guidelines. *Reply* at 6.  Even if this claim were true, Quinonez was not prejudiced.  He was amply advised that he would be sentenced under the guidelines both in the Plea Agreement and at the change of plea hearing.[5]   Furthermore, the only way to have avoided an evidentiary hearing was to have waived all objections.  Had Mr. Booker done so, the PSR calculations would have governed, and those guidelines provided for a life sentence rather than a range of 360 to life.  Therefore, Quinonez would have been subjected to a higher sentence absent the evidentiary hearing.

Quinonez' reliance on *Risher v. United States*, 992 F.2d 982, 983 (9th Cir.

---

[5]   The Court listened carefully to the entire tape of the change of plea hearing.

1993), in support of this argument is misplaced. *Risher* found that counsel's performance would have been deficient if he had failed to warn the defendant that he might be sentenced under the sentencing guidelines and thus be subjected to a significantly higher sentence. However, the facts in *Risher* were unusual.

According to Ninth Circuit law at the time of the plea, the Sentencing Reform Act – pursuant to which the sentencing guidelines were promulgated – was unconstitutional. *Id*. (citing *Gubiensio-Ortiz v. Kanahele*, 857 F.2d 1245 (9th Cir. 1988)). In the interval between plea and sentencing, the United States Supreme Court upheld the constitutionality of the Sentencing Reform Act and the guidelines. *Id.* (citing *United States v. Mistretta*, 488 U.S. 361 (1989)). The Ninth Circuit held that Risher's counsel was on notice that the Supreme Court had granted certiorari in *Mistretta* and should have known that there was a possibility that the Supreme Court would uphold the Sentencing Reform Act prior to sentencing. *Id.* (remanding for an evidentiary hearing to determine whether counsel had failed to advise and, if so, whether the defendant would have insisted on going to trial).

In *Risher*, there was a possibility and perhaps even an expectation that the defendant would not be sentenced under the guidelines. Here, there was no possibility that Quinonez would not be sentenced under the guidelines.

Quninonez' final allegation on this issue is that he would not have pleaded

guilty if he had known "this vital piece of information" that he might be sentenced under the guidelines.  *Reply* at 8.  This is simply not credible.

### 6. Failure to Seek to Enforce the Plea Agreement.

Quinonez' entire claim on this issue is "The attorney failed to enforce the Plea Agreement and Movant was thereby prejudiced."  *§ 2255 Motion* at 18.  The Government responded essentially that this claim is vague and conclusory and therefore subject to dismissal.  The Court agrees.  It is completely devoid of factual support.

In his Reply, Quinonez does not explain the basis of his claim.  Rather, he alleges that his plea was involuntary because counsel misled him into believing that he would be entitled to the safety valve and that his sentence would be within the 60- to 80-month range.  *Reply* at 9.  He further alleges that "counsel employed lies surrounding the plea agreement and sentence, Counsel's illicit actions were for the sole purpose of inducing Petitioner to enter a plea of guilt (sic)."  *Reply* at  9.  At the same time, he inconsistently argues that counsel failed to enforce the Plea Agreement.  At no point under this claim in either the § 2255 Motion or the Reply does Quinonez allege that he would have otherwise gone to trial as required by *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985) (defendant must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded

guilty and would have insisted on going to trial").

To the extent that this claim is part of the breach of Plea Agreement claim, it is subject to dismissal. Quinonez acknowledged in both the Plea Agreement and at the change of plea hearing that no one had promised or predicted a particular sentence. *Plea Agreement* ¶ VI.A. The Court advised that even if someone had done so, the Court would not be bound by that promise or prediction.

Sworn statements made in open court at the time of a plea hearing carry a strong presumption of verity and are entitled to great weight. *Chizen v. Hunter*, 809 F.2d 560, 562 (9th Cir. 1986) (citing *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)); *see also U.S. v. Kazcynski*, 239 F.3d 1108, 1114-15 (9th Cir. 2001) ("substantial weight" must be given to in-court statements). While that presumption is not necessarily an insurmountable barrier to an evidentiary hearing, contentions that in the face of the record are "wholly incredible" are subject to summary dismissal. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). *See also United States v. Moore*, 599 F.2d 310, 313-14 (9th Cir. 1979) (denying claim as "conclusory and contradicted by the record" where allegations about attorney's performance during plea stage were vague, counsel's statement in open court that they had ample time to discuss the case were uncontradicted, court thoroughly advised the defendant of the rights she was waiving by pleading guilty, and  nothing

in the record suggested there had been a breakdown of attorney-client relations).

The Court notes that at no time – at the plea hearing, the three-day sentencing hearing, on the first appeal, in his initial counseled § 2255 Motion, on remand, on the second appeal, or in his current § 2255 Motion – did Quinonez allege that he was told his sentence would be 60 to 80 months.  Indeed, he was even  represented by two different attorneys in two appeals.  Given the significant disparity between the sentence allegedly promised or predicted and the sentence ultimately imposed, it is simply not credible that Quinonez believed he would receive a 60- to 80-month sentence.[6]  *See Watts v. United States, 841 F.2d 275, 278 (9th Cir. 1988)* (finding the court did not err in dismissing the § 2255 motion without an evidentiary hearing because "It is impossible to believe that if Watts had thought he was to receive a sentence of no more than 20 years rather than the life sentence he was given . . . , he would not have mentioned this obviously relevant inconsistency in his Rule 35

---

[6]  Quinonez cites *United States Giardino, 797 F.2d 30 (1st Cir. 1986)* in support of his apparent argument that his plea should be set aside.  However, in *Giardino*, unlike here, the "lie" that induced the defendant to plead guilty went to the issue of guilt.  Furthermore, the court merely remanded for an evidentiary hearing on whether the allegations were true.  *Id. at 32*.

Quinonez also contends that unlike defense counsel's prediction in *United States v. Granados, 168 F.3d 343 (8th Cir. 1999)*, his attorney's prediction that the sentence would be less than ten years was not cured by the plea colloquy because he was not advised by the Court of the statutory maximum sentence.  However, this contention is rebutted by the record.  Quinonez was unequivocally advised in the Plea Agreement and at the change of plea hearing that the sentence imposed on the drug count could range from 10 years to life.   He was also advised that the Court was not bound by any prediction of counsel.

**Memorandum Decision and Order - 19**

motion and in his correspondence with Judge Duenas.  Watts' earlier silence refutes his present allegations.").

To the extent Quinonez is asserting a new claim in his Reply apart from the ineffective assistance of counsel claim, it is also  subject to dismissal.  *See United States v. Hughes, 970 F.2d 227, 235 n.6 (7th Cir. 1992)* (arguments raised for the first time in reply are waived).  *See also United States v. Joiner, 847 F. Supp. 604, 606-07 (N.D.Ill. 1994)* (refusing to consider arguments raised for first time in reply in a § 2255 proceeding); *Wilson v. United States, 149 F.Supp.2d 1045 (N.D.Ind. 2001)* (same).  Indeed, a reply is not even mentioned among the documents to be reviewed when a court is making a decision as to whether an evidentiary hearing on a § 2255 motion is warranted.  *See* Rule 8 of the Rules Governing Section 2255 Proceedings.[7]

### 7.     Failure to Move the Court to Correct or Reduce the Sentence under **Rule 35(a) of the Federal Rules of Criminal Procedure** After the Clear Errors at Sentencing.

Rule 35 allows the Court to "correct a sentence that resulted from

_____

[7]  The new claim would have been barred even if raised in an amended § 2255 motion rather than in the Reply.  Unless a claim relates back to a claim in the original motion, it is subject to dismissal unless it is brought within the one year statute of limitations.  *See Mayle v. Felix, 545 U.S. 644 (2005).*  A claim of involuntary plea is not related to a claim of ineffective assistance of counsel for failure to enforce a plea agreement.  Here, the statute of limitations for filing a § 2255 motion expired on April 17, 2009.  However, Quinonez' Reply was not filed until January 4, 2010.  Therefore, it would be time barred even if raised in an amended § 2255 motion.

arithmetical, technical, or other clear error." Fed. R. Crim. P. 35(a).[8] He contends that counsel was ineffective for not moving under the rule to correct alleged sentencing errors immediately. *§ 2255 Motion* at 19-20; *Reply* at 10-11. He refers to the Court's alleged violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), by determining the drug quantity, role enhancement, and obstruction of justice enhancement issues rather than submitting those issues to a jury for proof beyond a reasonable doubt.

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 489. Here, the facts found by the Court at Quinonez' sentencing did not increase his sentence beyond the statutory maximum of life on the drug charge and twenty (20) years on the money laundering charge. Accordingly, the Court was not required by *Apprendi* to submit the issues to a jury.

### 8.     Failure to Object to Noncompliance with the Vienna Convention.

Quinonez next alleges that counsel did not apprise him of his right to consular assistance as provided by Article 36 of the Vienna Convention on

---

[8] At the time of Quinonez' sentencing in 2003, the deadline for filing Rule 35(a) motions was seven (7) days. The rule was amended effective December 1, 2009 changing the time period to fourteen (14) days.

Consular Relations, April 24, 1963, 21 U.S.T. 77 ("Vienna Convention").  *§ 2255*

*Motion* at 20-21; *Reply* at 11-13.  He alleges that he was therefore deprived of the

opportunity to be advised by a consulate representative who "had no personal,

financial or political interest in the outcome of [his] case."  *Reply* at 13.

As explained by the Supreme Court,

> Article 36 of the [Vienna] Convention concerns consular
> officers' access to their nationals detained by authorities
> in a foreign country . . . . [W]hen a national of one country
> is detained by authorities in another, the authorities must
> notify the consular officers of the detainee's home country
> if the detainee so requests.  Article 36(1)(b) further states
> that "[t]he said authorities shall inform the person
> concerned [i.e., the detainee] without delay of his rights
> under this sub-paragraph.

*Sanchez-Llamas v. Oregon*, 548 U.S. 331, 338-39 (2006) (quoting 21 U.S.T. at

101).  A consulate has the resources to assist a prisoner in various ways such as by

explaining the United States' legal system and how it differs from that of the

prisoner's country, conducting its own investigation, contacting witnesses or

obtaining evidence from his country, filing amicus briefs, and contacting friends

and family.  *Osagiede v. United States*, 543 F.3d 399, 403 (7th Cir. 2008).

The Court is not aware of any Supreme Court or Ninth Circuit case

specifically holding that the Vienna Convention confers enforceable private rights

on individuals in a criminal proceeding.  *See, e.g.,  Breard v. Greene*, 523 U.S. 371,

376 (1998) (assuming without deciding in a § 2254 proceeding that the Vienna Convention "arguably" confers on an individual the right to consular assistance following arrest); *United States v. Lombera-Camorlinga*, 206 F.3d 882, 883-84 (9th Cir. 2000) (en banc) (even if judicial remedies are available for violation of Article 36, suppression of evidence is not among them).[9]

Even assuming enforceable private or individual rights exist under the Vienna Convention, and assuming they were violated, Quinonez would not be entitled to relief on this claim absent prejudice. *Breard*, 523 U.S. at 377 ("[I]t is extremely doubtful that the violation should result in the overturning of a final judgment of conviction without some showing that the violation had an effect on the trial.").

In *Osagiede*, the Seventh Circuit noted a distinction between seeking relief under the Vienna Convention itself and seeking relief under a constitutional claim of ineffective assistance of counsel. *Osagiede*, 543 F.3d at 407-08 (noting that "*Sanchez-Llamas* appears to express a preference for subsuming Vienna

---

[9] Quinonez cites *United States v. Rangel-Gonzales*, 617 F.2d 529 (9th Cir. 1980), as an example of a court setting aside a conviction for failure to inform the defendant of his rights under the Vienna Convention. However, as he correctly states, the Ninth Circuit was addressing an INS regulation rather than the Vienna Convention itself. The Ninth Circuit subsequently distinguished *Rangel-Gonzales* by noting that the case stood only for the proposition "that an alien who can show prejudice stemming from the INS's failure to follow its own regulation requiring notification cannot later be prosecuted for illegal reentry because the defendant was never legally deported under U.S. law in the first place." *United States v. Lombera-Camorlinga*, 206 F.3d 882, 887 (9th Cir. 2000).

Convention claims in broader constitutional attacks, rather than basing relief entirely on the treaty itself.").  The court therefore rejected the government's argument that *Sanchez-Llamas* precluded ineffective assistance of counsel claims based on the Vienna Convention and proceeded to conduct a *Strickland* analysis.

    *Osagiede* found that counsel was ineffective for failing to be aware of and advising the defendant of his rights under the Vienna Convention.  *Id*. at 411.  The court then remanded for expansion of the record to determine if an evidentiary hearing was warranted on the prejudice prong of *Strickland* to determine whether the consulate "could have" and "would have" assisted the defendant with his case. *Id*. at 413.  However, *Osagiede* involved unique factors indicating that the defendant went "a long way toward showing that he deserves an evidentiary hearing." *Id.*[10]

    On the other hand, in a subsequent case, the Seventh Circuit affirmed a district court's dismissal of a Vienna Convention claim in a § 2255 proceeding without an evidentiary hearing because the movant had not identified witnesses in Mexico with whom the consulate could have communicated or alleged how those witnesses would have assisted in his defense.  *See Sandoval v. United States*, 574

---

[10]  Those factors included possible assistance locating a witness in Nigeria and translation and analysis of tapes of wiretapped conversations involving "difficult to decipher" heavy Nigerian accents.  *Id.*

F.3d 847, 851 (7th Cir. 2009).  The court concluded:

> Other than a language barrier, which was addressed by the
> use of an interpreter, Sandoval shows no other prejudice
> he may have faced by not being put in touch with the
> Mexican consulate.  Many Mexican nationals face
> criminal trials in this country, and Sandoval has not
> shown that the Mexican consulate would have chosen to
> assist him in particular, nor has he shown what type of
> assistance the consulate could have provided that would
> have helped his case.

*Id.* at 851.

Like Sandoval, Quionez has not alleged, other than in the most general of

terms, how he was prejudiced by not having contact with the Mexican consulate.

His claim that he would have somehow benefitted from receiving advice from

"representatives that had no personal, financial or political interest in the outcome

of [his] case" is highly speculative.  Furthermore, he has not shown that there was

anything unique about his case that would have led the Mexican consulate to

provide him with any assistance, that there were any witnesses in Mexico the

consulate could have located, or that there were other special services the consulate

could have provided.

    **9.    Failure to Object to Violation of Rights Under the Due Process
Clause of the Fifth Amendment and the Notice and Jury Trial
Guarantees of the Sixth Amendment.**

Finally, Quinonez contends that counsel failed to object to the Court's

alleged violations of *Apprendi* in determining the drug quantity and enhancements without a jury and proof beyond a reasonable doubt. *§ 2255 Motion* at 22; *Reply* at 13-14. As stated above, the Court did not violate *Apprendi* because the Court's findings did not increase the sentence beyond the statutory maximum for the offenses to which he pled guilty.

## CONCLUSION

Quinonez has failed to establish deficient performance and resulting prejudice as required by *Strickland* on any of the asserted grounds of ineffective assistance of counsel. Nor has he alleged facts which, if true, would state a claim for relief. Accordingly, his § 2255 Motion is subject to dismissal in its entirety without an evidentiary hearing.

## CERTIFICATE OF APPEALABILITY

A § 2255 movant cannot appeal from the denial or dismissal of his § 2255 motion unless he has first obtained a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A certificate of appealability will issue only when a movant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard when the court has dismissed a § 2255 motion (or claims within a § 2255 motion) on procedural grounds, the movant must show that reasonable jurists would find debatable (1) whether the

court was correct in its procedural ruling, and (2) whether the motion states a valid claim of the denial of a constitutional right. *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).[11]  When the court has denied a § 2255 motion or claims within the motion on the merits, the movant must show that reasonable jurists would find the court's decision on the merits to be debatable or wrong. *Slack,* 529 U.S. at 484; *Allen v. Ornoski*, 435 F.3d 946, 951 (9th Cir. 2006).

Recently amended Rule 11 of the Rules Governing § 2255 Proceedings provides that the district court must issue or deny a certificate of appealability at the time it enters a final order adverse to the movant.  Rule 11(a), 28  U.S.C. foll. § 2255.  After carefully considering the record and the relevant case law, the Court finds that reasonable jurists would not find the Court's determination regarding Quinonez' claims of ineffective assistance of counsel to be debatable or wrong. Accordingly, a certificate of appealability will not issue.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Quinonez' Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody Pursuant to

_____

[11]  The requirements for a certificate of appealability for a § 2255 appeal do not appear to differ from the requirements for a certificate of appealability for a § 2254 habeas petition related to a state conviction.  *See United States v. Asrar*, 116 F.3d 1268 (9th Cir. 1997).  Therefore, cases addressing the requirements in the context of a § 2254 proceeding are pertinent to a § 2255 proceeding as well.

28 U.S.C. § 2255 (Docket No. 1 in CV-09-200-E-BLW) is DISMISSED.

IT IS FURTHER HEREBY ORDERED that no certificate of appealability shall issue. Quinonez is advised that he may still request a certificate of appealability from the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b) and Local Ninth Circuit Rule 22-1. To do so, he must file a timely notice of appeal.

IT IS FURTHER HEREBY ORDERED that if Quinonez files a timely notice of appeal, and not until such time, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the Ninth Circuit Court of Appeals. The district court's file in this case is available for review online at www.id.uscourts.gov.

IT IS FURTHER HEREBY ORDERED that Case No. CV-09-200-E-BLW is DISMISSED with prejudice.

DATED: **July 9, 2010**

Honorable B. Lynn Winmill
Chief U. S. District Judge